IN THE UNITD STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Wells Fargo Bank, N.A.,   )
                          )
       Plaintiff,   )   Case No. 1:12-CV-794
                          )
vs.                       )
                          )
Fifth Third Bank,         )
                          )
       Defendant.   )

O R D E R

This matter is before the Court on Defendant Fifth Third Bank's motion to dismiss Count II of Plaintiff Wells Fargo Bank N.A.'s Complaint. For the reasons set forth below, Defendant's partial motion to dismiss is well-taken and is **GRANTED**.

I. Background

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") presents claims against Defendant Fifth Third Bank ("Fifth Third") for breach of contract and gross negligence, arising out of Fifth Third's administration of a $32.5 million line of credit. For purposes of the pending motion, the Court assumes that the following facts from the Complaint are true.

On August 9, 2004, Fifth Third and Eastern Livestock ("Eastern") entered into a Credit Agreement and Security Agreement ("Credit Agreement") whereby Fifth Third extended to Eastern a line of credit with a limit of $22.5 million. Complaint ¶ 6. Under the Credit Agreement, Fifth Third would make credit available to Eastern via a "Funding Account" and "Controlled Disbursement Accounts" upon which Eastern could draw. Id. ¶ 10. Eastern was required to maintain a "Collection Account" with Fifth Third into which Eastern would deposit any and all proceeds from the loan collateral. Id. ¶ 7. Deposits in this account became property of Fifth Third and would be applied to satisfy Eastern's

obligations under the Credit Agreement and all of Eastern's other existing and/or future obligations. Id. ¶ 8. The Credit Agreement defined "Obligations" to include not only the line of credit but "all other loans, advances, and indebtedness of [Eastern]...of every kind and description, whether now existing or hereafter arising..." Id.

On or about January 31, 2005, Eastern sought to increase the limit on its line of credit. Id. ¶ 13 Accordingly, Fifth Third contacted Wells Fargo, and, on February 9, 2005, the two parties entered into a "Participation Agreement by and between Wells Fargo Business Credit, Inc. and Fifth Third Bank" ("Participation Agreement"), whereby Wells Fargo purchased a $10 million interest in the Eastern line of credit, increasing the limit on Eastern's account to $32.5 million. Id. ¶ 14. In return, Wells Fargo received approximately a 30.7% interest in the line of credit as well as a proportionate interest in the collateral and collections. Id. ¶ 15. The Credit Agreement was expressly made subject to the terms of the Participation Agreement. Id. ¶ 15.

According to Wells Fargo, Section 5.1 of the Participation Agreement granted Fifth Third the power to "administer, manage and service" the line of credit and required Fifth Third to exercise this power "as fully as if [Fifth Third] had retained its entire interest as 'Lender'...but acting on behalf of [Wells Fargo]." Id. ¶ 23. Fifth Third was also required to apply any collections deposited by Eastern in the order provided by Section 4.3 of the Participation Agreement. Id. ¶ 18. Section 4.3 stated that after the payment of expenses, fees, interest, and outstanding excluded advances up to $1 million, Fifth Third was to apply any remaining collections toward payment of the credit extended to Eastern "with [Wells Fargo] receiving its proportionate share thereof." Any remaining collections after the obligations under the Participation Agreement were

satisfied would be applied "to pay to [Fifth Third] any other of [Eastern]'s Obligations owing...until paid in full." Id. Section 2.2 of the Participation Agreement reiterated that Wells Fargo and Fifth Third's interests in the collections were of "equal priority" and that "neither shall have any priority over the other except as expressly set forth in Section 4.3." Id. ¶ 19. Section 6.4 further provided that Fifth Third could not offset any of Eastern's obligations to the detriment of Wells Fargo without Wells Fargo's consent and that "any sum" received by Fifth Third "applied or to be applied to [Eastern]'s obligations...shall be applied in the manner provided in Section 4.3." Id. ¶ 20.

Over the course of its management of the line of credit, Fifth Third would regularly give Eastern "provisional" credit, advancing credit to Eastern before checks deposited by Eastern in the Collection Account actually cleared the bank. Id. ¶ 25. Fifth Third earned "cash management fees" for extending this provisional credit. Id. Wells Fargo was not entitled to any portion of these fees. Id. ¶ 26. These extensions of provisional credit and cash management fees constituted excluded advances and fees, respectively, under the Participation Agreement. Id. ¶¶ 26-27.

In early 2010, Eastern sought a second $10 million increase on the line of credit. Id. ¶ 29. In response, Fifth Third conducted an audit of Eastern's books in May 2010 and requested that Wells Fargo participate in the proposed increase. Id. ¶¶ 29-30. Wells Fargo requested it be provided with the results of the May 2010 audit, but Fifth Third did not do so until August 12, 2010, stating that the delay was due to the audit "making its way through the bank's exam administration and review process." Id. ¶ 30. Upon reviewing the audit, Wells Fargo expressed concerns regarding a significant increase in affiliate activity by Eastern on its account and the "float," the period of time

after which checks deposited by Eastern were credited to Eastern's account but before which those checks had actually cleared. Id. ¶¶ 31. Wells Fargo denied the request to increase the credit limit and stated that it "wanted out" of the line of credit. Id. ¶ 34. Ultimately, Wells Fargo consented to an extension of the maturity date on the line of credit to October 18, 2010, based on Fifth Third's representation that it would conduct a second audit that would "put to rest the affiliate activity." Id. ¶ 36.

The line of credit matured on October 18, 2010, with the entire unpaid balance plus interest, fees, and charges becoming immediately due and payable. Id. ¶ 37. Although Eastern deposited more than $90 million into the Collection Account between October 18, 2010, and November 2, 2010, Fifth Third did not apply any of these funds to pay the principal or interest then due on the line of credit, instead transferring these funds to the Funding Account. Id. ¶ 38-39. Further, Fifth Third instructed Eastern to deposit all affiliate checks directly into the Funding Account as well, resulting in Eastern depositing more than $340 million in cash receipts from affiliates directly into the Funding Account. Id. ¶ 40. Fifth Third also continued to extend provisional credit on all checks deposited, including affiliate checks, extending Eastern provisional credit in excess of $50 million, well beyond the $32.5 million limit on Eastern's account. Id. ¶ 41.

On November 4, 2010, Fifth Third informed Wells Fargo that it had identified apparent check kiting activity on Eastern's account and that the account was frozen effective November 2, 2010. Id. ¶ 42. After freezing the account, Fifth Third began returning checks drawn on the line of credit, including 146 checks totaling more than $57 million payable to Eastern's affiliates. Id. ¶ 43. However, Fifth Third continued to collect funds deposited by Eastern into the Funding Account and Collection Account and

applied those funds to obligations other than the line of credit, despite the fact that the line of credit had become fully due and payable. Id. ¶ 44. On or about December 16, 2010, Eastern involuntarily entered Chapter 11 Bankruptcy. Id. ¶ 46.

In its Complaint, Wells Fargo asserts two causes of action against Fifth Third: Count I – Breach of Contract and Count II – Gross Negligence. Id. ¶¶ 48-62. Under Count I, Wells Fargo alleges Fifth Third breached the Participation Agreement (1) by failing to apply the collections it received in the manner and order required by Section 4.3, and (2) by failing to service, administer and manage Wells Fargo's interest in the line of credit "as fully as if [Fifth Third] had retained its entire interest as 'Lender' under the Loan Documents, but acting on behalf of [Wells Fargo]," as required by Section 5.1. Id. ¶¶ 51-56. Count I alleges that Wells Fargo suffered damages in an amount not less than $10 million due to Fifth Third's alleged breach of contract. Id. ¶ 57.

Under Count II, Wells Fargo asserts that Fifth Third "had a duty to act[] on behalf of [Wells Fargo] with the same degree of care as if [Fifth Third] had retained its entire interest as Lender under the Loan Documents" and breached this duty (1) by failing to apply the collections in the manner required by Section 4.3 of the Participation Agreement, (2) by extending provisional credit to Eastern despite Fifth Third's knowledge that Eastern was suspected of engaging in check kiting, (3) by misrepresenting and withholding facts from Wells Fargo, and (4) by failing to exercise any or very slight care in its management of the line of credit "and/or intentionally doing something unreasonable with disregard to a known risk or a risk so obvious that Fifth Third must be assumed to have been aware of it, and of a magnitude such that it was highly probably that harm to Wells Fargo would follow." Id. ¶¶ 58-61. Count II alleges

Wells Fargo suffered damages as a result of Fifth Third's alleged gross negligence in an amount not less than $10 million. Id. ¶ 62. On December 14, 2012, Fifth Third filed a Partial Motion to Dismiss seeking dismissal of Count II.

## II. Standard of Review

A motion to dismiss for failure to state a claim operates to test the sufficiency of the complaint. The court must construe the complaint in the light most favorable to Plaintiff and accept as true all well-pleaded factual allegations. See Scheuer v. Rhodes, 416 U.S 232, 236 (1974), and Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). The court need not accept as true legal conclusions or unwarranted factual inferences. Lewis v. ACB Business Servs., Inc., 135 F.3d 389, 405 (6th Cir. 1998).

The complaint, however, must contain more than labels, conclusions, and formulaic recitations of the elements of the claim. Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir. 2008) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The factual allegations of the complaint must be sufficient to raise the right to relief above the speculative level. Id. Nevertheless, the complaint is still only required to contain a short, plain statement of the claim indicating that the pleader is entitled to relief. Id. (citing Erickson v. Pardus, 551 U.S. 89, 93 (2007)). Specific facts are not necessary, and the pleader is only required to give fair notice of the claim and the grounds upon which it rests. Id. To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)

6

(internal quotation marks omitted). Mere conclusions, however, are not entitled to the assumption of truth. Id. at 1950. A claim is facially plausible if it contains content which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 1949. Plausibility is not the same as probability, but the complaint must plead more than a possibility that the defendant has acted unlawfully. Id. If the complaint pleads conduct which is only consistent with the defendant's liability, it fails to state a plausible claim for relief. Id.

### III. Analysis

Fifth Third moves to dismiss Wells Fargo's gross negligence claim on two grounds: (1) the claim is merely duplicative of Wells Fargo's breach of contract claim; and (2) the claim is barred by Ohio's economic loss doctrine. In response, Wells Fargo argues that its gross negligence claim adequately alleges wrongdoing by Fifth Third beyond and independent of its breach of contract claim. Wells Fargo also contends its gross negligence claim is not barred by the economic loss rule because Fifth Third expressly agreed to be liable for its gross negligence; Wells Fargo's gross negligence claim amounts to an intentional tort that is not barred by Ohio's economic loss rule; and because Wells Fargo seeks punitive damages in addition to purely economic damages.

### A. A Duty Independent of the Contract

In Ohio, "generally, the existence of a contract action excludes the opportunity to present the same case as a tort claim." Textron Fin. Corp. v. Nationwide Mut. Ins. Co., 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996) (quoting Wolfe v. Continental Cas. Co., 647 F.2d 705, 710 (6th Cir. 1981)). This is because where parties have reached an agreement "protection for economic losses should arise under the bargained-for

7

contract." Middleton v. Rogers Ltd., Inc. 804 F. Supp.2d 632, 639 (S.D. Ohio 2011) (citing Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co., 537 N.E.2d 624, 630-31 (Ohio 1989)); (see also Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc., 835 N.E.2d 701, 704 (Ohio 2005) ("When a duty in tort exists, a party may recover in tort. When a duty is premised entirely upon the terms of a contract, a party may recover based upon breach of contract"). Further, a party may not transform a breach of contract claim into a tort claim by simply additionally alleging that the opposing party intentionally, wantonly, or maliciously failed to perform its contractual duties. Ketcham v. Miller, 136 N.E. 145, 146-147 (Ohio 1922); see also Wolfe v. Continental Cas. Co., 647 F.2d 705, 710 (6th Cir. 1980).

Nevertheless, a plaintiff may state a tort claim in addition to a breach of contact claim if the plaintiff is able to demonstrate that tortious conduct by the defendant that breached "a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." Textron, 684 N.E.2d at 1270. In addition, a tort claim arising out of a breach of contract "must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of the contract." Id. at 1271; see also Cincinnati Gas & Elec. Co. v. General Elec. Co., 656 F. Supp. 49, 62-63 (S.D. Ohio 1986) (emphasis original).

Upon review, the Court concludes that Wells Fargo's gross negligence claim fails to identify a duty owed by Fifth Third independent of the duties created by the Participation Agreement. Wells Fargo's breach of contract and gross negligence claims are both premised on Fifth Third's alleged failure to perform its duties to act on behalf of Wells Fargo with the same degree of care as if Fifth Third had remained sole lender on

8

the line of credit, and to apply collections in the manner required by the Participation Agreement. Clearly, these duties are contractual in nature as Fifth Third would have no duty to administer the line of credit on behalf of Wells Fargo in the absence of the Participation Agreement. Further, although Wells Fargo makes separate factual allegations in Count II, claiming Fifth Third intentionally misrepresented facts and withheld information, it fails to identify how this conduct breached any duty independent of those created by the Participation Agreement. Moreover, Ohio law makes clear that Wells Fargo cannot convert its contract claim into a tort claim merely by alleging that Fifth Third's conduct was willful or malicious. Ketcham, 136 N.E. at 146. As such, Wells Fargo's gross negligence claim fails as a matter of law.

Moreover, even if Wells Fargo could establish that Fifth Third owed and breached a duty arising independently of the parties' contract, Wells Fargo's gross negligence claim is still insufficient because it fails to allege *actual* damages beyond the $10 million loss it attributes to Fifth Third's alleged breach of contract. Instead, Wells Fargo appears to seek only additional *punitive* damages for Fifth Third's alleged gross negligence. Consequently, Wells Fargo's gross negligence claim is improper as a matter of law. Textron, 684 N.E.2d at 1270.

Wells Fargo attempts to circumvent these well-established rules of law by citing, *inter alia*, Thompson v. Germantown Cemetery, 934 N.E.2d 956 (Ohio Ct. App. 2010) and Hubbell v. Xenia, 885 N.E.2d 290 (Ohio Ct. App. 2008) which hold that each contract contains a common law duty to perform the contract with care, skill, reasonable expedience and faithfulness and that the breach of this duty may constitute a tort. Thompson, 934 N.E.2d at 960; Hubbell, 885 N.E.2d at 295; see also Hunsicker v.

9

Buckeye Union Cas. Co., 118 N.E.2d 922, 924-925 (Ohio Ct. App. 1953) ("Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract."). However, as other courts interpreting Hunsicker have concluded, although this duty is imposed by law, "it describes how a party is to perform its contractual obligations, i.e., it does not establish a duty independent of the contract." Tarquinio v. Equity Trust Co., 2007 WL 1874241, at *3 (Ohio Ct. App. 2007), citing Sekerak v. National City Bank 342 F. Supp.2d 701, 714 (N.D. Ohio 2004). Further, Thompson and Hubbell involved personal injuries, rather than the economic damages sought by Wells Fargo in its gross negligence claim. As such, notwithstanding the above case law, it remains incumbent upon Wells Fargo to identify a duty owed by Fifth Third independent of the Participation Agreement. Wells Fargo has failed to meet this requirement, and, accordingly, its gross negligence claim fails to state a claim.

  B. Ohio's Economic Loss Rule

  Fifth Third also moves to dismiss Wells Fargo's gross negligence claim on the grounds it is barred by Ohio's economic loss rule. Under Ohio law, "the economic loss rule generally prevents recovery in tort of damages for purely economic loss." Corporex, 835 N.E.2d at 704. This rule is in place to ensure that parties to a contract "remain free to govern their own affairs" and cannot use tort claims to circumvent their agreed-upon allocation of economic risks and losses. Id. (quoting Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co., 537 N.E.2d 624, 627-628 (Ohio 1989). Regarding the application of the economic loss rule to actions sounding in negligence, "t]he well established general

10

rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." <u>Floor Craft Floor Covering, Inc. v. Parma Community General Hosp. Ass'n</u>, 560 N.E.2d 206, 208 (Ohio 1990) (<u>quoting</u> <u>Nebraska InnKeepers, Inc. v. Pittsburgh-Des Moines Corp.</u>, 345 N.W.2d 124, 126 (Iowa 1984)).

Wells Fargo alleges that "as a proximate result of Fifth Third's gross negligence, Wells Fargo has suffered damages in an amount not less than $10 million."  These alleged damages, the amount of which exactly mirrors the damages claimed by Wells Fargo in its breach of contract claim, are clearly economic in nature as they represent the $10 million Wells Fargo paid for its interest in the line of credit in question.  As such, Wells Fargo's gross negligence claim constitutes a claim sounding in negligence seeking economic damages and is therefore barred by the economic loss rule.

Wells Fargo argues that the economic loss rule is inapplicable to its gross negligence claim because Fifth Third expressly agreed to be liable for its gross negligence in Section 5.7 of the Participation Agreement.  The relevant portion of Section 5.7 states:

> Neither [Fifth Third] nor any of its directors, shareholders, officers, employees or agents shall be liable for any action taken or omitted by [Fifth Third] in accordance with this Article V, except in the case of [Fifth Third's] own gross negligence, bad faith, or willful misconduct or breach of the express terms or conditions of this Agreement or the Loan Documents, for actual proximate damage (but not for general, special, consequential or exemplary damages), and then only to the extent such gross negligence, willful misconduct, bad faith or breach is actionable by rule of law.  No implied covenants, functions, responsibilities, duties, obligations, or liabilities may be read into this Agreement or any Loan Document or otherwise exist against [Fifth Third].

Wells Fargo argues that this language amounts to an express agreement by Fifth Third to waive the economic loss rule and to be liable for gross negligence.  Fifth Third argues that, rather than waiving the economic loss rule, this provision actually preserves the economic loss rule as it states Fifth Third would be liable for gross negligence only to the extent such a claim would be "actionable by rule of law."

Under Ohio law, "the intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. Medical Life Ins. Co., 509 N.E.2d 411, 411-12 (Ohio 1987) (citing Blosser v. Enderlin 148 N.E. 393 (Ohio 1925)). When construing unambiguous terms in a contact, "courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." Shifrin v. Forest City Enterprises, Inc., 597 N.E.2d 499, 501 (Ohio 1992).  This rule is no different on the subject of damages, as parties to a contract "must be allowed to bargain freely to allocate the risks attendant to their undertaking, including the possibility of purely economic damages." Corporex, 835 N.E.2d at 705.

The Court concludes that Fifth Third did not agree to be liable for any and all acts of gross negligence on its part nor did it waive application of the economic loss rule. The plain language of Section 5.7 states that Fifth Third would not be liable "for any action or omission taken by [Fifth Third] in accordance with this Article V" except in the case of gross negligence but "only to the extent such gross negligence...is actionable by rule of law."  This language clearly indicates the parties' intent that Fifth Third would not be liable for any and all gross negligence but only liable for damages caused by its gross negligence in carrying out the duties it assumed under Article V and then only to the extent it would be liable under any applicable rule of law, including the economic

12

loss rule. Consequently, the Court concludes Fifth Third did not waive application of the economic loss rule, and Wells Fargo's gross negligence claim is barred.

Wells Fargo also argues that its gross negligence claim is not barred by the economic loss rule because gross negligence is an intentional tort and therefore not barred by Ohio's economic loss rule. See e.g. Eysoldt v. ProScan Imaging, 957 N.E.2d 780, 785 (Ohio Ct. App. 2011) ("[T]he economic-loss rule does not apply to intentional torts."). In support, Wells Fargo cites several Ohio cases indicating that fraud, civil conspiracy, negligent misrepresentation, and tortious interference claims are not barred by the economic loss rule and that gross negligence satisfies the "actual malice" standard under Ohio law. However, none of the cases cited by Wells Fargo hold that gross *negligence* amounts to an intentional tort, nor do they in any way abrogate or diminish the basic rule that a party suffering purely economic loss due to another's *negligence* may not recover under Ohio law. See Floor Craft, 560 N.E.2d at 208; see also Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc., 276 F. 3d 845, 853 (6th Cir. 2002) (concluding that the economic loss doctrine barred all of plaintiff's tort claims including gross negligence). And this echoes the fact that an intentional tort must be premised on conduct that lies outside of contractual duties (e.g. conversion or extortion). See e.g. Eysoldt, 957 N.E.2d at 637 (economic loss rule did not bar plaintiff's tort claims where the defendant's conduct "went beyond the failure to perform promises contained in the contract").

Finally, Wells Fargo argues that its gross negligence claim is not barred by the economic loss rule because it seeks punitive damages under that claim in addition to actual damages. However, punitive damages are only available where the plaintiff

13

alleges a tort committed independently of the breach of contract. Saberton v. Greenwald, 66 N.E.2d 224, 229-30 (Ohio 1946).  Because Wells Fargo has failed to establish that its breach of contract claim is accompanied by an independent tort, it may not recover punitive damages, and its gross negligence claim is barred by the economic loss rule.

Accordingly, Defendant's Partial Motion to Dismiss Count II of Plaintiff's Complaint is well-taken and is **GRANTED** and Count II is **DISMISSED WITH PREJUDICE**.


**IT IS SO ORDERED.**


Date March 14, 2013                             s/Sandra S. Beckwith
                                                Sandra S. Beckwith
                                                Senior United States District Judge